**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **BRECKENRIDGE O'FALLON, INC.,** ) | |
| **BRECKENRIDGE JEFFERSON** ) | |
| **COUNTY, INC., OZARK BUILDING** ) | |
| **MATERIALS, L.L.C., and** ) | |
| **BRECKENRIDGE OF ILLINOIS, L.L.C.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **No. 4:21-CV-00621-NCC** |
| ) | |
| **INTERNATIONAL BROTHERHOOD OF** ) | |
| **TEAMSTERS LOCAL UNION NO. 682,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Lift the Court's September 21, 2021 Stay (Doc. 28).  In response, Defendant filed a Motion to Dismiss Plaintiff's Complaint (Doc. 29).  Plaintiffs filed a memorandum in opposition to Defendant's Motion to Dismiss (Doc. 30).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 23).  For the following reasons, Plaintiffs' Motion to Lift the Court's September 21, 2021 Stay (Doc. 28) will be **GRANTED**, and Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 29) will be **DENIED**.

**I. Background**

Plaintiffs are four Missouri ready mix concrete and building material suppliers: Breckenridge O'Fallon, Inc. ("O'Fallon"), Jefferson County, Inc. ("JeffCo"), Ozark Building Materials, L.L.C. ("Ozark"), and Breckenridge of Illinois, L.L.C. ("Illinois") (collectively "Plaintiffs") (Doc. 1 at 2).  While not a party, Breckenridge Material Company ("BMC") is another supplier of ready mix concrete and building materials to customers in Missouri and

Illinois (*id.* at 4).  Defendant is a union, International Brotherhood of Teamsters, Local Union No. 682 ("Local 682") (*id.* at 2-3).

Plaintiffs allege as follows.  The Collective Bargaining Agreement ("CBA") between BMC and Local 682 expired on March 14, 2021 (*id.* at 4).  Plaintiffs claim that Local 682 refused to bargain in good faith with BMC by engaging in pattern bargaining and adopting a take-it-or-leave-it position (*id.* at 5).[1]  On April 26, 2021, Local 682 picketed BMC (*id.* at 6).  On April 29, 2021, Local 682 picketed O'Fallon, JeffCo, Ozark, and Illinois (*id.*).  O'Fallon, JeffCo, Ozark, and Illinois were in turn unable to deliver products to customers (*id.* at 7).

In Count I of the Complaint, Plaintiffs claim the April 29th picketing was unlawful secondary picketing in violation of § 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b)(4), and § 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187, because O'Fallon, JeffCo, Ozark, and Illinois are separate legal and operating entities from BMC (*id.* at 6-8).[2]  In Count II, Plaintiffs claim that the April 29th picketing was unlawful secondary picketing and violated the no-strike provisions of the CBAs with O'Fallon, JeffCo,

---

[1] Pattern bargaining is the process where a union enters into a pattern agreement with parties within a given industry and demands any other entity wishing to do the same business within a specific jurisdiction of the union must accept the terms and conditions of the pattern agreement (Doc. 25 at 4).

[2] A secondary picketing or boycott claim under § 303 of the LMRA, through cross-reference to § 8(b)(4) of the NLRA, "prohibits … secondary boycott activities … directed at parties who are not involved in the labor dispute, as opposed to primary boycott activities in which a union pressures an employer to change its behavior."  Fed. Lab. Law: NLRB Prac. § 12:1 (Feb. 2022 Update).  "The gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it."  *Id*.  "Its aim is to compel the third party to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands."  *Id*.  "The ally doctrine in secondary boycott cases may be applied when a primary employer and a secondary

and Ozark in violation of § 301 of the LMRA, 29 U.S.C. § 185 (*id.* at 8).

On September 21, 2021, pursuant to the doctrine of primary jurisdiction, this Court stayed this action pending resolution of related charges before the National Labor Relations Board ("NLRB") (Doc. 25).  The NLRB proceedings have now concluded.

### A. NLRB proceedings[3]

In case 14-CB-276126, BMC filed a charge (the "Charge") alleging that Local 682's take-it-or-leave-it pattern bargaining violated § 8(b)(3) of the NLRA, 29 U.S.C. § 158(b)(3) (Doc. 29 at 2; Doc. 28-2).

In case 14-CC276803, BMC filed another charge (the "Priority Charge") alleging that Local 682's picketing was secondary picketing and unlawful in violation of §§ 8(b)(3) and 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(3)-(4) (Doc. 29 at 2; Doc. 28-2).

On August 25, 2021, Acting Regional Director William B. Cowen dismissed the Priority Charge based on insufficient evidence in a short-form dismissal (Doc. 28-1; Doc. 29 at 16).  On November 4, 2021, Director Mark E. Arbesfeld denied BMC's appeal to the General Counsel and Office of Appeals (Doc. 28-2).

As to a "related charge" (i.e., the Charge), Director Arbesfeld noted that the evidence disclosed in that case showed that Local 682's pattern bargaining was lawful, but its take-it-or-leave-it position was unlawful: "the Union exceeded lawful hard bargaining and engaged in bad faith bargaining only by the manner in which it conducted itself in negotiations, by asserting a

_____

employer are so closely related or integrated that the secondary employer should not be permitted the protection of § 8(b)(4)(B)."  13 A.L.R. Fed. 466 (1972).

[3] To flesh out the NLRB proceedings, minimal facts are drawn from Plaintiff's memorandum in opposition to Defendant's Motion to Dismiss (Doc. 30).  However, the Court does not rely on any of those facts in deciding Plaintiffs' Motion to Lift the Court's September

'take it or leave it' position that demonstrated an unwillingness to reach an agreement; however, the Union's object of trying to obtain an area contract consistent with industry standards was otherwise lawful in this case" (Doc. 28-2 at 1).

As to the Priority Charge, Director Arbesfeld found the picketing was not unlawful. Director Arbesfeld found that O'Fallon and JeffCo were a single entity/employer with BMC, finding: "[i]n addition to common ownership and common or centralized control of labor relations, the evidence supported a finding that there was common management and interrelation of operations despite the differences among the entities cited in the appeal" (Doc. 28-2 at 1-2; Doc. 29 at 16).  Director Arbesfeld found that Ozark was a neutral and not a single entity/employer with BMC, but that the picketing complied with the standards in *Sailors Union of the Pac. (Moore Dry Dock Co.)*, 92 NLRB 547 (1950) (Doc. 28-2 at 2; Doc. 29 at 16). Director Arbesfeld did not find that Illinois was a single entity/employer with BMC and did not comment on whether Illinois was a neutral (Doc. 28-2 at 1-2; Doc. 29 at 16).

Defendant argues this action should be dismissed based on the NLRB proceedings (Doc. 29).  Plaintiffs argue that the stay should be lifted and this action allowed to proceed (Docs. 28, 30).  The Court agrees with Plaintiffs.

## II. Analysis

Section 303 of the LMRA creates a claim for damages for a violation of § 8(b)(4) of the NLRA, which governs secondary picketing and boycotts.  29 U.S.C. §§ 158(b)(4), 187.  Section 303 is an alternative to the pursuit of administrative remedies.  *International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.*, 342 U.S. 237 (1952).  Section 303 "provides a

---

21, 2021 Stay (Doc. 28) or Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 29).

remedy independent of NLRB proceedings, and … the one may be pursued without first exhausting the other." *Hyatt Chalet Motels, Inc. v. Salem Bldg. & Const. Trades Council*, 298 F. Supp. 699, 702 (D. Or. 1968).  The NLRB (the "Board") need not determine that a union's conduct constitutes an unfair labor practice under § 8(b)(4) of the NLRA as a prerequisite to suit under § 303 of the LMRA.  *Mason-Rust v. Laborers' Int'l Union of N. Am., AFL-CIO, Loc. 42*, 435 F.2d 939, 942 (8th Cir. 1970).

However, a Board determination may be given res judicata or collateral estoppel effect in a § 303 action.  *See, e.g., Hyatt Chalet Motels*, 298 F. Supp. 699 (holding Board determination of § 8(b)(4) violation established union's liability in § 303 action); *Int'l Wire v. Loc. 38, Int'l Bhd. of Elec. Workers*, 475 F.2d 1078 (6th Cir. 1973) (holding Board determination of no § 8(b)(4) violation established union was not liable in § 303 action).  The district court in *Hyatt Chalet Motels* found that where full findings on the merits were made by the Board, and the Board's order was enforced by the Court of Appeals, the Board determination should be given res judicata effect.  298 F. Supp. at 702.  Likewise, in *International Wire*, the Sixth Circuit held that, after a full hearing before an NLRB Trial Examiner where there was no contention that the employer had been denied a full and fair hearing, and the Trial Examiner and the Board found that no unfair labor practice had been proved and dismissed the complaint, the Board determination was rightly given collateral estoppel effect.  475 F.2d at 1079.

Here, no hearing was held as part of the NLRB proceedings.  The parties have not cited, and the Court has not found, a case where res judicata or collateral estoppel was applied absent a hearing.  Rather, the weight of authority holds that the mere dismissal of a charge is not entitled to res judicata effect.  In *International Wire*, the district court considered the line of authority in

*Thomas v. Consolidation Coal Co. (Pocahontas Fuel Co. Div.)*, 380 F.2d 69 (4th Cir. 1967),

*Aircraft & Engine Maint. & Overhaul, Bldg., Const., Mfg., Processing & Distribution v. I. E.*

*Schilling Co.*, 340 F.2d 286 (5th Cir. 1965), and *Taube Elec. Contractors, Inc. v. Int'l Bhd. of*

*Elec. Workers, Loc. Union No. 349, AFL-CIO*, 261 F. Supp. 664 (S.D. Fla. 1966). *Int'l Wire v.*

*Loc. 38, Int'l Bhd. of Elec. Workers*, 357 F. Supp. 1018, 1020 (N.D. Ohio 1972), *aff'd*, 475 F.2d

1078 (6th Cir. 1973). The court noted that, "in each of those cases the NLRB declined to take

action on the complaint of an unfair labor practice [so] there was no final administrative decision

which could support a claim of res judicata." *Id*.

In *Thomas*, "the Regional Director, John C. Getreu, found insufficient evidence of

violation, and upon review it was found that further proceedings were deemed unwarranted,

which decision was not appealed." 380 F.2d at 79.[4]

In *I. E. Schilling*, "Schilling filed a charge [and] [t]he general counsel declined to issue a

complaint." 340 F.2d at 289. The Fifth Circuit noted that "[t]he failure of the general counsel to

issue a complaint is not necessarily based on the evidence or the merits of a case" and that

dismissal of the § 303 action would "deny to the employer his day in court in clear contradiction

to the requirements of Section 303." *Id*. In another case *Oolite Concrete*, the Fifth Circuit

likewise held, based on *I. E. Schilling*, that "the right of the employer to file [a § 303 action] is

not affected by the circumstance that the Labor Board declines to proceed with an unfair labor

practice charge." *Aircraft & Engine Maint. & Overhaul, Bldg., Const., Mfg., Processing &*

*Distribution & Allied Indus. Emp., Loc. 290, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen*

*& Helpers of Am. v. Oolite Concrete Co.*, 341 F.2d 210 (5th Cir. 1965). Notably, the refusal to

---

[4] Note, *Thomas* involved a § 301 action. 380 F.2d at 77-79.

issue a complaint in *Oolite Concrete* was based upon a finding of no § 8(b)(4) violation.  *See Taube Elec. Contractors*, 261 F. Supp. at 665 (observing "[w]hile [*I.E. Schilling*] indicates that the refusal by the general counsel to issue a complaint was not based upon a consideration of the merits of the charges, the record in [*Oolite Concrete*] clearly establishes that the general counsel's refusal to issue a complaint was based upon a finding that the activities complained of were not proscribed by Section 8(b)(4)").

In *Taube Electrical Contractors*, "[a]n investigation was conducted by the Regional Director which resulted in a finding that the evidence adduced during the investigation was insufficient to warrant the issuance of a complaint pursuant to Section 8(b)(4)(C) and except for one instance of picketing there was likewise an insufficiency of evidence to warrant the issuance of a complaint pursuant to Section 8(b)(4)(B)."  261 F. Supp. at 664.  The court granted a motion to strike the defense of res judicata.  *Id.* at 666; *see also Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union, Alaska Longshore Div., Unit 60*, 721 F.3d 1147, 1156 (9th Cir. 2013) ("Although some courts have applied collateral estoppel to issues the NLRB has decided in a fully litigated enforcement proceeding, the federal courts have unanimously held that the mere dismissal of a charge by the General Counsel does not preclude a Section 303 action") (citation omitted); *United Food & Com. Workers Int'l Union Loc. No. 576, AFL-CIO v. N. L. R. B.*, 675 F.2d 346, 353 n.7 (D.C. Cir. 1982) ("Although the General Counsel's decision to dismiss represents an estimate of the merits of the charge and operates to foreclose Board consideration of that charge, it is not a decision on the merits with res judicata effect."); *Peltzman v. Central Gulf Lines, Inc.*, 497 F.2d 332, 334–35 (2d Cir. 1974) ("[T]he decision of the General Counsel

not to file a complaint on [the plaintiff's] behalf has no *res judicata* effect, as it is not a final judgment on the merits.").

Accordingly, this Court must allow Plaintiffs to proceed with their § 303 claim, notwithstanding Director Arbesfeld's findings that Local 682's picketing was not unlawful and that at least two of the plaintiffs, O'Fallon and JeffCo, were a single entity/employer with BMC.

While Defendant invokes the doctrine of primary jurisdiction (and, indeed, the Court stayed this action on that basis), that doctrine has no application to dismiss this action.  Section 301 of the LMRA creates a claim for contractual violations.  29 U.S.C. § 185.  Under the doctrine of primary jurisdiction, a federal court will not review claims that are characterized as contractual but are actually primarily representational in nature.  *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 815 F.3d 834, 839–41 (D.C. Cir. 2016); *Morello v. Fed. Barge Lines, Inc.*, 746 F.2d 1347, 1349–50 (8th Cir. 1984).  The court must "examin[e] the major issues to be decided" and determine "whether they can be characterized as primarily representational or primarily contractual."  *Local Union 204, Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.,* 668 F.2d 413, 419 (8th Cir. 1982).  In primary jurisdiction cases, courts are largely examining § 301 claims that implicate § 9 of the NLRA, 29 U.S.C. § 159, which explicitly governs "representatives and elections."

Here, there is really no issue of representation.  Rather, Plaintiffs alternately assert their § 303 secondary picketing claim as a contractual § 301 claim, arguing that the picketing violated no-strike provisions in the various CBAs.  The Court will allow this claim to proceed along with the § 303 claim.  *See Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO*, 815 F.3d at 840 (a federal court has jurisdiction where a claim is also contractual).  As a

8

final matter, the Court notes that, while the NLRB proceedings are not dispositive, the Court may consider them as persuasive.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Lift the Court's September 21, 2021 Stay (Doc. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a revised Joint Scheduling Plan no later than **fourteen (14) days from the date of this order**.

Dated this 13th day of July, 2022.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE